UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

UNITED STATES OF AMERICA,

against-

JABRON GREEN,

Defendant.
--------------------------------------------------------------x

19 CR 496 (CM)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/25/2023

### DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

McMahon, J.:

Jabron Green pleaded guilty to distributing and possession with intent to distribute cocaine base in violation of 21 USC 841(b)(1)(B); he was sentenced by the Court to the statutory mandatory minimum for that offense, which is 60 months in prison. Green is serving his sentence at United States Penitentiary Lewisburg ("USP Lewisburg"). He is scheduled to be released on February 15, 2026.

Before the Court is Green's motion pursuant to 18 USC 3582 (c)(1)(A), asking the Court to reduce his sentence to 12 months of home confinement and three years of supervised release. Green is seeking release so that he can receive effective treatment for his "uncontrolled hypertension, renal failure, and allergies." Def Motion at 1.

The Government asks that the Court deny Green's motion arguing that "he has not established extraordinary and compelling reasons justifying his early release and, in any event, the factors set forth in 18 U.S.C. § 3553(a) weigh against any such reduction." Govt. Resp. at 1.

1

Background

On March 26, 2018, a Government cooperator (CW-1) approached Calvin Hudson (Green's codefendant in this case) to purchase crack. Hudson told CW-1 to purchase the crack from Green. CW-1 met with Green at Green's apartment and purchase approximately 35 grams of crack in exchange for $1,570. The buy was surreptitiously recorded by law enforcement.

On July 8, 2019, Green was charged by indictment with one count of participating in a conspiracy to distribute 280 grams and more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). On January 27, 2020, the defendant pled guilty, pursuant to a plea agreement, to a superseding information charging him with one count of distributing and possessing with the intent to distribute 28 grams and more of crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(B). In the plea agreement, the parties stipulated that the defendant's applicable base offense level, under Chapter Three of the Sentencing Guidelines, was 24. This was reduced by three levels, under U.S.S.G. § 3E1.1(a), for acceptance of responsibility, resulting in a total offense level of 21. Because of the defendant's criminal history, which included prior state convictions for criminal possession of a controlled substance, burglary, and attempted robbery, the defendant had three criminal history points and fell within Criminal History Category II. Based upon these calculations, the parties stipulated that the defendant's Guidelines range would be 41 to 51 months' imprisonment. However, because the offense of conviction carried a mandatory minimum term of 60 months' imprisonment, the applicable Guidelines term of imprisonment was 60 months.

More than a year and a half would pass between Mr. Green's guilty plea and his sentencing. Green's counsel asked for—and the Court granted—several adjournments of his client's sentencing, citing Green's hypertension and the specter of his being exposed to COVID-

19 in prison, as well as Green's desire to attend to family and business concerns before his inevitable incarceration.

On September 22, 2021, defendant appeared for sentencing. In his sentencing argument, Counsel detailed how Mr. Green had become a productive member of society in his business dealings, and was now a fine family man, who took responsibility for, and doted on his stepson. Counsel also argued that the prevalence of COVID-19 in prison posed a heightened risk for Green, given his history of hypertension. While the Court credited much of what counsel had to say and agreed that, in the circumstances, the 60-month mandatory minimum was excessive, the Court sentence Green to the mandated 60 months in prison. Green asked for, and the Court granted Green a longer than usual period of time to surrender voluntarily for service of his sentence, so he could attend to family concerns and wrap up his business affairs. Green ultimately surrendered and began serving his sentence on April 4, 2022.

Compassionate Release

Under 18 U.S.C. § 3582(c), a district court "may not" modify a term of imprisonment once imposed, except under limited circumstances. One such circumstance is the so-called compassionate release provision, which provides that a district court "may reduce the term of imprisonment" where it finds "extraordinary and compelling circumstances." § 3582(c)(1)(A)(i). A motion under this provision may be made by either the Bureau of Prisons or a defendant, but in the latter case only "after the defendant has *fully exhausted all administrative rights* to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* (emphasis added). Thus, where a compassionate release motion is brought by a

defendant who has not "fully exhausted all administrative rights," the district court "may not" modify his term of imprisonment.

If a defendant demonstrates that he has exhausted his administrative remedies with the BOP, the Court must then consider whether the defendant has met his burden of establishing "extraordinary and compelling circumstances" warranting release.[1] In the past, this Court—and many of my district court colleagues—looked to United States Sentencing Guidelines § 1B1.13 (the applicable Guidelines section for sentencing reductions pursuant 18 U.S.C. § 3582(c)(1)(A)(i)), for guidance on what constituted "extraordinary and compelling circumstances."[2] That changed on September 25, 2020, when the United States Court of Appeals for the Second Circuit held that § 1B1.13 is not applicable to a motion brought by a defendant in the district court. *United States v. Brooker* No. 19-32180-CR, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020). The Second Circuit reasoned that the language of § 1B1.13—language that has not been updated since the passing of the First Step Act—addressed only sentencing reduction

---

[1] "A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue." *See, e.g., United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992).

[2] The Application Notes to Section 1B1.13 describe the circumstances under which "extraordinary and compelling reasons" exist. *See* § 1B1.13 comment (n.1). For example, the medical circumstances ground reads as follows:

(A)     Medical Condition of the Defendant—

    (i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia

    (ii)     The defendant is—
        (I)     suffering from a serious physical or medical condition,
        (II)     suffering from a serious functional or cognitive impairment, or
        (III)     experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self- care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13 comment (n.1).

motions initiated by the Bureau of Prisons. *Id.* In making clear that the district court was not constrained by the narrow grounds for granting compassionate release in § 1B1.13, the Second Circuit declared unequivocally that "district courts have discretion to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [the court] in motions for compassionate release," and that "neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion." *Id* at *7.

What *Brooker* did not change, however, is the mandate in § 3582(c)(1)(A)(i) that a court contemplating a defendant's release pursuant to that section must first consider the sentencing factors at 18 U.S.C. § 3553(a), to the extent they are applicable, and determine whether they counsel for or against release. A court may still deny compassionate release where the § 3553(a) factors override, in any particular case, what would otherwise be extraordinary and compelling circumstances.

Green Exhausted his Administrative Remedies in the Bureau of Prisons

On or about October 24, 2022, defense counsel submitted a request for compassionate release on behalf of Green to USP Lewisburg. *See* Govt. Exhibit A. Counsel stated that Green "suffers from hypertension along with numerous other ailments" and asserted that Green's "hypertension is uncontrolled and resulted in Stage 3 renal failure," concluding that Green could "no longer receive adequate medical treatment" at USP Lewisburg. On or about November 17, 2022, the Warden at USP Lewisburg denied the request, concluding that Green did not meet the criteria of an inmate with a debilitating condition. *See* Govt. Exhibit B.

On or about December 6, 2022, Green filed a request for administrative remedy in which he requested reconsideration of his October 24 request for compassionate release or, in the alternative, placement in home confinement. *See* Exhibit Govt. C at 2. Green asserted that the

Warden overlooked (1) his "entire medical record which also includes a combination of other morbid health conditions – obesity, chronic allergic asthma related or metabolic respiratory abnormalities due to a long history of marijuana and cigarette smoking," and (2) his "physical disabilities – thoracic herniated disc in my upper back and two bulging disc in my loweer (*sic*) back, including lumbar segment 4 and 5 damages causing nerve impingement." Green further asserted that "my physical disabilities prevent me from 'self-caring' in this prison environment to overcome my morbid medical conditions as a whole." *Id.*

On or about December 13, 2022, the Acting Warden signed a response, which noted that a review of Green's matter revealed that he was "medically vulnerable due to having a BMI over 30" and stated that Green's request for home confinement had been referred to a review committee. *Id.* at 1.

On or about January 13, 2023, Green's request for home confinement was denied. *See* Exhibit D at 1 (reflecting "COVID Home Confinement Denial").

Accordingly, Green has exhausted his administrative remedies, and the present motion for compassionate release is properly before the Court.

Green's Motion Before the District Court

Green asks that his sentence be reduced to time served and 12 months of home confinement. He claims that his "uncontrolled hypertension, renal failure, and acute allergies are extraordinary and compelling reasons for a sentence reduction." Def. Mot. at 5. Green says that he is basically an invalid at USP Lewisburg and that his condition is not improving. He implores the Court to let him go home where he can be treated effectively by local doctors and able to go to work under their care, as he was able to do prior to his incarceration. He says that he has been

a model inmate; that he has a job waiting for him upon his release; and that "a sentence below 41- 51 months would be just punishment" based on the Section 3553(a) factors. *See id.* at 6-7.

Green has a number of serious medical conditions. His medical records show that he suffers from a range of medical conditions, including hypertension, chronic kidney disease, and obesity. *See e.g.*, Govt. Ex. E, at 10 (reflecting history of hypertension and BMIs of 33.3 and 33.6), at 15 (reflecting Stage 3 chronic kidney disease). Notwithstanding an array of medications prescribed by BOP physicians, Green's hypertension persists. Take for instance, Mr. Green's blood pressure readings from the following dates: April 11, 2022, 180/120; April 13, 2022, 165/98; April 14, 2022, 142/89; May 12, 2022, 210/114; June 7, 2022, 209/115; June 27, 2022, 236/132; July 30, 2022, 248/139; August 3, 2022, 229/129; August 5, 2022, 196/120; August 11, 2022, 209/116. (*See* Defendant Exhibit B at 67-68). Mr. Green's blood pressure was so dangerously high at one point that medical staff was concerned about "renal and cardiovascular collapse," and expressed that his numbers were both "alarming" and a "new normal." (*Id* at 64).

This is not to say Mr. Green's care while incarcerated has been inadequate. To the contrary, BOP medical staff have been attentive to Green's blood pressure problem and working hard to bring his pressure under control. In October 2022, Green was twice transferred to a local hospital when his hypertension medicine was altered in response to his throat swelling. Govt. Ex. E, at 208 (reflecting October 17 transfer for evaluation of chest pain following discontinuation of ACE inhibitor "due to his throat swelling"), at 183 (reflecting October 24 transfer after Green "became dizzy and passed right out"). Thereafter, his hypertension was temporarily brought under control. *Id.* at 19 (record of clinical encounter on December 2, 2022, in which a doctor wrote "remarkable to see HTN control that eluded him despite multiple med regimens, this is very encouraging"), at 17 (record of clinical encounter on December 2, 2022, during which

7

Green reported "feeling pretty good"; offered "no complaints"; and said he was "hoping to get the CARES Act for home confinement"). But for all of the medical staff's good efforts, medical records since the encouraging December 2 reports indicate that Green's pressure continues to fluctuate and is sometimes dangerously high.

Green's take away from his medical records is that the medical staff at USP Lewisburg cannot care for him and that he should be sent home where he would receive effective medicines that would allow him to work, instead of languishing as an "invalid" at Lewisburg. However, granting that Green's hypertension presents a challenge for BOP medical staff, it is not clear that physicians in the community would necessarily fare any better. Mr. Green's medical condition therefore does not present an extraordinary and compelling reason for a sentence reduction. Should the day come when BOP is unable to care for Mr. Green, he would be free to reapply for relief.

Green argues that his demonstrated rehabilitation while in prison is a further basis on which to grant his request for release. In the year Green has been in prison, he has completed several BOP business related classes, attended the Non-Residential Drug Abuse program, and committed no infractions.

It comes as no surprise to the Court that Mr. Green has been a model prisoner, as he was far along the road to rehabilitation when he came before the Court for sentencing. While rehabilitation alone cannot qualify a defendant for release, it can in some cases interact with other circumstances to create an extraordinary and compelling reason for a sentence reduction. However, the evidence of rehabilitation offered by the defendant, while deserving of praise, does not, alone or in combination with all other relevant considerations (including his medical condition), establish extraordinary and compelling reasons for a reduction in his sentence. *See,*

*e.g.*, *United States v. Lopez*, S2 10 CR 798-PAC-L, 2021 WL 2821149, at *3 (S.D.N.Y. July 7, 2021) (denying motion to reduce life sentence where "[t]he defendant's efforts at self-improvement, which include earning a Bachelor of Ministry Degree and admission into USP Lewisburg's selective Work Cadre are commendable. His clean disciplinary record, letters from BOP staff attesting to his character and work ethic, and letters of support from his fellow inmates, his family and friends, and his church community all speak to the defendant's good characteristics . . .").

Even assuming Green satisfied his burden to establish extraordinary and compelling reasons that might support a sentence reduction, the Section 3553(a) factors weigh against his request that he be released after serving just 13 months, which is well below the bottom of the applicable Guidelines range absent the statutory mandatory minimum. Green's offense was serious and merits punishment—he was ready, willing, and able to assist Calvin Hudson by personally selling a significant quantity of an extremely dangerous narcotic. Furthermore, he engaged in his criminal conduct following serious prior felony convictions (including criminal possession of a controlled substance, attempted robbery, and burglary) and after serving a lengthy prison sentence (approximately 13 years). Green's release after a little more than a year in custody would be insufficient to promote respect for the law, to protect the public, and to deter others from engaging in similarly destructive and dangerous crimes.

This constitutes the decision and order of the Court

Dated: May 25, 2023

*[signature]*

Colleen McMahon
United States District Court Judge